# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Richard Allen Smuda, ) | |
| ) | |
| Plaintiff, ) | **REPORT AND RECOMMENDATION** |
| ) | |
| vs. ) | |
| ) | |
| Darin Ray Stewart (C.O.), et. al., ) | Case No. 1:14-cv-142 |
| ) | |
| Defendants. ) | |

Before the court is a "Motion for Summary Judgment" filed by the defendants. Judge Hovland has referred the motion to the undersigned for preliminary consideration.

## I. BACKGROUND

### A. Procedural history

The plaintiff, Richard Allen Smuda ("Smuda"), is an inmate at the North Dakota State Penitentiary ("NDSP"). He initiated the above-entitled action *pro se*. (Doc. No. 6). Following an initial screening pursuant to 28 U.S.C. § 1915A, the court allowed him to proceed with claims of excessive force against defendants Stewart, Sybrant, Kopp, Dengel, and Moses in their individual capacities for an incident that occurred on November 11, 2012. (Doc. No 8).

Defendants have filed a Motion for Summary Judgment seeking dismissal on the grounds that the force that was used was appropriate under the circumstances. They also seek dismissal on grounds of qualified immunity. (Doc. No. 30). Smuda filed a response that was followed by defendants' reply. (Doc. Nos. 32-33).

1

### B. Relevant facts

Except as otherwise stated, the following facts have either not been properly controverted by Smuda or have been construed in his favor.

#### 1. Defendants' account of the November 11, 2012, incident

Defendants have filed affidavits setting forth their accounts of what took place on the day in question. (Doc. Nos. 31-1 through 31-5). These accounts are generally consistent with each other as well as consistent with accounts given in memoranda and reports prepared by one or more of defendants immediately following the incident and later in prison disciplinary proceedings initiated against Smuda. (Doc. Nos. 31-7 through 31-14). In addition to these affidavits, memoranda, and reports, defendants have submitted photographs of what appears to be a small cut and dried blood behind Smuda's right ear and minor bruising on Smuda's body. (Doc. No. 31-13).

Defendants have described the events giving rise to Smuda's claims of excessive force as follows. Stewart was working in the NDSP's West Unit on November 11, 2012. At approximately 5:08 pm., while en route to "door 10 to search inmates before they returned to their units after visits," Stewart encountered Smuda, who muttered something about a missing laundry cart. When asked by Stewart to repeat himself, Smuda responded with an expletive. Stewart ordered Smuda to immediately return to his cell to be secured for the evening. When Smuda asked why he was being secured, Stewart responded that he had been insolent to staff and disobeyed a direct order. Stewart radioed Case Worker Yarbrough to advise that Smuda needed to be secured and then left to conduct his searches. (Doc. No. 31-4).

Upon completing his searches, Stewart returned to the West Unit Office. Standing with his back to the door, Stewart heard Smuda's voice from behind him inquire why Smuda was being

secured. Turning, Stewart observed Smuda "standing in the office doorway, red-faced and shaking his fists balled up." Stewart twice ordered Smuda to return to his cell. Each time, Smuda simply repeated his inquiry in a louder voice. (Id.).

Stewart contacted the Lieutenant to request his presence at the West Unit Cell House. Smuda stated "you're going to need more guys then just him" as he stepped out of the office and into the hallway towards the soda machines. Stewart stepped out of the office as well. (Id.).

Outside the office, Smuda "came towards [Stewart] and appeared more agitated." Stewart called all available officers for assistance. (Id.; Doc. Nos. 31-3, 31-5). Symbrant was the first to respond. (Doc. Nos. 31-4, 31-5).

Stewart commanded Smuda to "turn around and cuff up." (Id.). Smuda responded that he neither wanted nor had to "cuff up" and began turning in a counterclockwise direction in what Symbrant perceived as attempt to prevent Officer Stewart from putting restraints on him. (Id.; Doc. Nos. 31-1, 31-5). Stewart attempted to secure Smuda's left arm, reaching for Smuda's left wrist with his left hand while simultaneously placing his right forearm behind Smuda's left arm armpit. Smuda responded by punching Stewart on the left side of the face with a closed right fist. (Doc. Nos. 31-3, 31-5).

Symbrant gained control of Smuda's right arm as Stewart performed "an inside center takedown" of Smuda. Pinning Smuda to the floor, Stewart "controlled Smuda's head with his left hand and performed the mandibular angle to [Smuda's] left ear" while simultaneously ordering Smuda to cease resistance and place his arms behind his back. (Doc. No. 33-4).

Kopp and Dengel were the next two correctional officers to respond to Stewart's call for assistance. (Doc. Nos. 31-1, 31-2). As Kopp approached, she observed Stewart and Symbrant

3

taking Smuda to the ground. (Id.). She called for additional backup and then stepped in, kneeling on Smuda's right side with her left knee while Symbrant knelt on Smuda's back. (Id.) As Dengal approached, he heard Stewart yelling "cuff up" and "stop resisting." (Doc. No. 31-2). Upon his arrival, he knelt down and grabbed Smuda's left leg. (Id.).

Moses was the fourth correctional officer to respond to the call for assistance. Walking down the hallway to the West Unit Cell House, Moses heard Stewart giving the command to "cuff up." (Doc. No. 31-3). Arriving at Gate 8, he observed Stewart, Sybrant and Kopp holding Smuda to the floor and yelling "stop resisting." ( Id.). Stepping in, Moses gained control of Smuda's legs by "cross[ing] [Smuda's] feet and [bringing] [Smuda's] feet into his butt." ( Id.). Kopp then handed her cuffs to Symbrant, who placed them on Smuda' s wrists. (Doc. Nos. 31–1 through 31-5).

Shortly thereafter, as tensions began to subside, Symbrant assisted Smuda to his feet. (Doc. Nos. 31-1, & 31-4- through 31-5). Symbrant and Dengel then proceeded to escort Smuda to the infirmary. (Id.) Stewart did not accompany them. (Doc. No. 31-4).

In the infirmary, Smuda was placed in an observation cell without restraints and searched. (Doc. Nos. 31-1, and 31-4- through 31-5). Thereafter he was changed into disciplinary detention clothing, placed back in restraints, and examined by a nurse, who observed some blood behind Smuda's right ear and bruising on Smuda' left temple. (Id.). Smuda reportedly insisted that, aside from lower back discomfort, which he attributed to weight lifting, he felt fine. (Id.).

### 2.  Smuda's account of the November 11, 2012, incident

Smuda described the November 11, 2012, incident giving rise to this action as follows in his complaint:

> Defendant Darin Stewart used Excessive Force against Plaintiff Smuda by grabbing his arm and pulling on it and by slamming him down on the floor. Darin was

4

rubbing his knees, elbows, and fist on Inmate Smuda's face. Applying an Mandibular Angle to Mr. Smuda's right ear cutting it with his thumb nail.

The cut was indicated by the nurse to be split about ½ inch. With a small amount of blood present behind the right ear. Abrasion present to the left temple with redness present, and slight bruising on Mr. Smuda's face.

That was why Darin Stewart had bruising on his knees, by rubbing them on Mr. Smuda's face.

Defendant Timothy Sybrant illegal action, failing to correct that misconduct and by assisting in that misconduct by jumping on Mr. Smuda's back causing some back pain as noted.

Both Defendants Darin and Timothy actions violated Plaintiff Smuda's rights under the Eighth Amendment to the United States Constitution. Causing Plaintiff Smuda pain, suffering, physical injury, mental and emotional distress. To ware the Plaintiff Smuda had to be forced to take a shot of medication against his will to relax.

Inmate Richard Allen Smuda # 19176 was not violating any prison rules and was not acting disruptively to be treated with disrespect.

This Complaint is in Reference to the Jail House Lawyers Manuel It states similar Claims that happened in this case as alleged by the Plaintiff Richard Allen Smuda.

The third Defendant Chelsea Rea Kopp violated the Plaintiff's rights just as much as all the other Defendants with her assisting in giving Timothy Symbrant her hand cuff's after putting her knees in Mr. Smuda's side with her heavy weight and by grabbing Mr. Smuda's right arm with her left hand causing pain and discomfort. On both of Mr. Smuda's side and hand. however there was nothing said just felt. Not to mention the fact that she accused the Plaintiff of the same thing that Darin Stewart alleged in Mr. Smuda hitting her on the left side of her (cheek bone area) with his right arm (fist) laying flat down however no one aw it except she felt it she says and took pictures with make up on and tried to accuse the Plaintiff of doing the same thing to her as did Stewart her coworker and friend. To protect him from a Law Suit.

Defendant Cody Myron Dengel grabbed Mr. Smuda's left leg causing bruising however there was nothing noted by the nurse just pictures taken.

His coworker and friend Defendant Cody Warren Moses had too taken over for Dengel and grab Mr. Smuda's both legs and cross them and put them up to butt. When Plaintiff Smuda was all ready cuffed up and his legs were not doing any thing or in any way in fact they were not even cuffed up.

5

> Defendants Kopp, Dengel and Moses had all assisting in this incident and caused bodily harm pain, suffering, physical injury and mental emotional distress. In Violation of the Eighth Amendment of the United States Constitution. The Plaintiff Smuda was all ready being restrained before the Three Defendants Kopp, Dengel and Moses came to assist. Causing more harm than good.

(Doc. No. 6) (errors in original).

In his response to defendants' motion, Smuda insists that he did nothing to provoke defendants or to otherwise warrant their use of force against him on November 11, 2012. Specifically, he asserts:

> The Defendants are adding things to the complaint that was not in there in the first place. I was not causing a disturbance, and I did not brake any of the prison rules. I was not guilty of making threats. There was no reason to maintain and restore discipline. They were acting under color of State law, In there Individual Capacity. They are not protected from qualified immunity, against police Brutality. When Stewart grabbed my arm first in attempt to cause harm. He violated my 8th Amended Rights.
>
> All I need to show is that there was injury, in this case there was several injuries Including mental health distress. I do not believe that I need to yell out loud that I am in pain and have injury. The guards can not get away with attacking inmates for no reason. There has been lots of cases about guards violating inmates rights and getting away with it.
>
> Therefore I ask this court to deny defendants motion for Summary Judgment.

(Doc. No. 32) (errors in original).

### 3. Smuda's disciplinary proceedings at the NDSP

Following the November 11, 2012, incident, Smuda was charged in an incident report with three violations: (1) insolence to a staff member; (2) threat to another person; and (3) assault and battery on staff. (Doc. Nos. 31-15 through 31-17).

The NDSP's disciplinary committee reviewed the incident report on November 20, 2012. (Doc. No. 18). Concluding that there was sufficient evidence to find Smuda guilty of the third

6

violation, it recommended the imposition of the following sanctions: 90 days disciplinary detention; loss of 6 months good time; loss of job; good time stop until re-employment; and a referral to administrative segregation. (Id.). Warden Colby Braun approved their recommendation on November 21, 2012. (Id.). Smuda's subsequent appeals were denied by Warden Braun and Director of Institutions Leanne Bertsch. (Doc. Nos. 21-24).

### 4. Smuda's state criminal proceedings

Smuda was charged in state district court with the offense of simple assault on a correctional officer following the November 11, 2012, incident. State v. Smuda, Cr. No. 08-2013-CR-0855 (Burleigh County). He entered a plea of guilty to the offense on November 18, 2014. (Id.) Judgement was entered on November 20, 2014. ( Id.)

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, indicates no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. Davison v. City of Minneapolis, Minn., 490 F.3d 648, 654 (8th Cir. 2007); see Fed. R. Civ. P. 56(a). Summary judgment is not appropriate if there are factual disputes that may affect the outcome of the case under the applicable substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of material fact is genuine if the evidence would allow a reasonable jury to return a verdict for the non-moving party. Id.

The court must inquire whether the evidence presents a sufficient disagreement to require the submission of the case to a jury or whether the evidence is so one-sided that one party must prevail as a matter of law. Diesel Mach., Inc. v. B.R. Lee Indus., Inc., 418 F.3d 820, 832 (8th Cir. 2005). The moving party bears the responsibility of informing the court of the basis for the motion

and identifying the portions of the record which demonstrate the absence of a genuine issue of material fact. Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011). The non-moving party may not rely merely on allegations or denials in its own pleading; rather, its response must set out specific facts showing a genuine issue for trial. Id.; Fed. R. Civ. P. 56(c)(1). The court must consider the substantive standard of proof when ruling on a motion for summary judgment. Anderson, 477 U.S. at 252.

## III. DISCUSSION

Qualified immunity shields a government official from liability "unless his conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Loch v. City of Litchfield, 689 F.3d 961, 965 (8th Cir. 2012) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Courts have discretion in deciding which prong of the qualified immunity analysis to address first. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

The Eighth Circuit Court of Appeals has explained, "The better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all." Bradford v. Huckabee, 394 F.3d 1012, 1015 (8th Cir. 2005) (quoting County of Sacramento, Cal. v. Lewis, 523 U.S. 833, 841 n.5 (1998)). The "'existence or nonexistence of a constitutional right' is therefore, the threshold question." Davis v. Hall, 375 F.3d 703, 712 (8th Cir. 2004) (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001). "If the answer to the first inquiry is no, courts do not delve further into the qualified immunity inquiry...the defendant is entitled to qualified immunity, and the suit is not permitted to proceed." Id.

Consequently, in deciding defendants' summary judgment motion, the court should first consider whether there are genuine questions of fact as to the alleged constitutional violations, i.e.

Smuda's claims of excessive force.

The standard pursuant to which Smuda's claim of excessive force must be evaluated was recently summarized by the Eighth Circuit in Santiago v. Blair, 707 F.3d 984 (8th Cir. 2013) as follows:

> When confronted with a claim of excessive force alleging a violation of the Eighth Amendment, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6–7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) (citing Whitley v. Albers, 475 U.S. 312, 320–21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)). "The Supreme Court recently clarified that the extent of any resulting injury, while material to the question of damages and informative as to the likely degree of force applied, is not in and of itself a threshold requirement for proving this type of Eighth Amendment claim." Williams v. Jackson, 600 F.3d 1007, 1012 (8th Cir. 2010) (citing Wilkins v. Gaddy, 559 U.S. 34, 130 S.Ct. 1175, 1178–79, 175 L.Ed.2d 995 (2010) (per curiam)).

Id. at 990.

In this case, no rational jury could not conclude from the record presented here that the defendants acted maliciously and sadistically to cause Smuda harm (as opposed to acting in good faith to maintain control of him) or that the force used was excessive under the circumstances, given: (1) the multiple accounts favoring defendants' version of the facts pertinent to this point; (2) Smuda's admission in his state criminal case to assaulting Stewart; (3) the uncontested fact that Smuda confronted Stewart at the West Unit Office, demanding to know why Stewart had ordered him back to his cell and to be secured earlier; (4) the uncontested fact that Smuda was immediately taken to the infirmary following the incident, where he was examined and treated by the NDSP's medical staff; and (5) statements attributed to Smuda by defendants (that Smuda does not dispute) that he was "ok" following the November 11, 2012, incident and that whatever injuries he suffered were minor as documented by photographs filed by defendants in support of their motion. Although

9

these photographs are not dispositive, they are "informative as to the likely degree of force applied." Id. Because the use of force was objectively reasonable, there are no questions of material fact as to the alleged violations of Smuda's constitutional rights. The court should therefore conclude that defendants are entitled to qualified immunity.

## III. CONCLUSION AND RECOMMENDATION

Based on the foregoing, it is **RECOMMENDED** that defendants' motion for summary judgment (Doc. No. 30) be **GRANTED** and the above-entitled action be **DISMISSED** with prejudice.

### NOTICE OF RIGHT TO FILE OBJECTIONS

Pursuant to D.N.D. Civil L.R. 72.1(D)(3), any party may object to this recommendation within fourteen (14) days after being served with a copy of this Report and Recommendation. Failure to file appropriate objections may result in the recommended action being taken without further notice or opportunity to respond.

Dated this 29th day of June, 2016.

*/s/ Charles S. Miller, Jr.*
Charles S. Miller, Jr., Magistrate Judge
United States District Court